1 **LAW OFFICE OF STEWART KATZ**
2 STEWART KATZ, State Bar #127425
  555 University Avenue, Suite 270
3 Sacramento, California 95825
  Telephone: (916) 444-5678
4
5 Attorneys for Plaintiff
  ROBERT I. REESE, JR.
6
7                    UNITED STATES DISTRICT COURT
8                    EASTERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| ROBERT I. REESE, JR.<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SACRAMENTO; Sacramento County Sheriff's Department Deputy DUNCAN BROWN (Badge # 1220); Sacramento County Sheriff's Department Deputy ZACHARY ROSE (Badge # 832); Sacramento County Sheriff's Department Sergeant JOSEPH MILLICAN (Badge # 246); Sacramento County Sheriff SCOTT JONES; DOES I through XV, inclusive,<br><br>Defendants.<br>_____/ | NO.<br><br>**PLAINTIFF'S COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW**<br>**[42 U.S.C. § 1983 - Excessive Force; Monell Liability; Battery; Bane Act]**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff complains and alleges as follows:

### I. JURISDICTION

   1.   This Complaint seeks damages and attorney's fees pursuant to Title 42 U.S.C. sections 1983 and 1988, for the violation of Plaintiff's civil rights. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section 1367.

Reese - Complaint for Damages            1

## II. VENUE

2. Plaintiff's claims alleged herein arose in the County of Sacramento, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. INTRODUCTION

3. This is a federal civil rights action with supplemental state law claims arising from defendant deputies using excessive and deadly force upon plaintiff Robert I. Reese Jr. in the early morning hours of March 25, 2011. Specifically, defendant deputies Zachary Rose and Duncan Brown had been dispatched to an apartment complex where Reese resided after a single 9-1-1 call of shots fired. When they arrived at the apartment complex there was no evidence that criminal conduct was afoot. Moreover, a single call of shots fired was very unusual and evidence that there was nothing amiss (it was later found that the call was maliciously placed by Reese's neighbor). The deputies then knocked on Reese's door. It was 5 a.m., yet the deputies did not announce who they were and the nature of business in any way. Expectedly, given the time of day and the fact that he could not see anyone when he looked through the door's peep hole, Reese grabbed a kitchen knife and he opened the door. Even though there was absolutely no justification for the use of any level of force, the deputies shot Reese at point-blank range, causing him serious injury in violation of his Constitutional rights.

4. The deputies' conduct was ratified by the County of Sacramento and was a result of the policies and practices of the Sacramento County Sheriff's Department. Moreover, in an effort to avoid scrutiny of their illegal acts, the Sacramento County Sheriff's Department falsely told the media and the public at large that the shots were preceded by the officers announcing who they were prior to shooting and before Reese opened his front door. That is not the case. Reese was fired upon with an assault rifle and a handgun because he was holding a knife when he opened the door of his home after the deputies banged on it at 5 a.m. without any announcement of who they were and what they wanted.

## IV. PARTIES

5. During all times mentioned in this Complaint, plaintiff Robert I. Reese Jr. (hereinafter "Reese") was, and is, a resident of the County of Sacramento, California.

6. Defendant County of Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California. Defendant County of Sacramento operates and manages the Sacramento County Sheriff's Department (hereinafter referred to as "Sheriff's Department").

7. Defendant Sheriff Scott Jones (hereinafter referred to as "Sheriff Jones") was at all times mentioned in this complaint the sheriff of the County of Sacramento and acting in the course and scope of that position. Defendant Jones is being sued in his individual and official capacities. Sheriff Jones exerts ultimate supervisory authority over all of his subordinates and promulgates or approves the promulgation of the policies and the practices of the Sacramento County Sheriff's Department.

8. Defendant Joseph Millican (Badge # 246) (hereinafter referred to as "Sgt. Millican") was at all times mentioned in this complaint a sheriff's department sergeant employed by the County of Sacramento and acting in the course and scope of his employment. Defendant Millican is being sued in his individual and official capacities.

9. Defendant Duncan Brown (Badge # 1220) (hereinafter referred to as "Deputy Brown") was at all times mentioned in this complaint a deputy sheriff employed by the County of Sacramento and acting in the course and scope of his employment. Defendant Brown is being sued in his individual and official capacities.

10. Defendant Zachary Rose (Badge # 832) (hereinafter referred to as "Deputy Rose") was at all times mentioned in this complaint a deputy sheriff employed by the County of Sacramento and acting in the course and scope of his employment. Defendant Rose is being sued in his individual and official capacities.

11. The true names and identities of defendants Does 1 through 5 are presently unknown to plaintiff. Plaintiff alleges that each defendant Does 1 through 5 was employed by the Sacramento County Sheriff's Department at the time of the conduct alleged and was

responsible for the promulgation of the customs and practices which caused the acts alleged herein and which resulted in plaintiff's injuries. Plaintiff will seek to amend this Complaint as soon as the true names and identities of defendants Does 1 through 5 have been ascertained.

12. The true names and identities of defendants Does 6 through 10 are presently unknown to plaintiff. Plaintiff alleges that each defendant Does 6 through 10 was a supervisor employed by the Sacramento County Sheriff's Department at the time of the conduct alleged and was individually responsible for the training, supervision and discipline of Deputies Brown and Rose. Plaintiff asserts that the failure to properly train, supervise and discipline officers, including deputies Brown and Rose, was a cause in fact of the injuries alleged herein. Plaintiff will seek to amend this Complaint as soon as the true names and identities of defendants Does 6 through 10 have been ascertained.

13. The true names and identities of defendants Does 11 through 15 are presently unknown to plaintiff. Plaintiff alleges that each defendant Does 11 through 15 was employed by the Sacramento County Sheriff's Department at the time of the conduct alleged and was responsible for the shootings and/or the acts and/or ommissions which resulted in plaintiff's injuries and the violation of his Constitutional rights. Plaintiff will seek to amend this complaint as soon as the true names and identities of defendants Does 11 through 15 have been ascertained.

## V. EXHAUSTION OF GOVERNMENT TORT CLAIM PROCEDURES

14. Plaintiff filed a timely government tort claim with the County of Sacramento as a prerequisite to the state law claims alleged herein.

15. That claim was filed on September 16, 2011, and has been acknowledged but not acted upon by the County of Sacramento. As more than 45 days have passed since the filing of the claim, that claim may be deemed rejected by operation of law.

///

///

///

## VI. FACTUAL ALLEGATIONS

16. At the time of this incident Reese was living in an apartment at 5018 Marconi Avenue, Carmichael, California. It was not an upscale apartment complex. Reese is an African-American, age 44. He is 5'7" tall and weighs approximately 160 pounds.

17. Shortly before 5:00 a.m. on March 25, 2011, Deputy Rose banged loudly on the front door of Reese's apartment with his flashlight.

18. It was still dark outside and there were no lights on in Reese's apartment, at least none that were visible to the deputies. There was no noise coming from his apartment.

19. Neither Rose nor any of the other eight or so deputies who had gone to Reese's apartment complex announced who they were, nor did they announce any request for Reese or any other occupant of his apartment or any other apartment to come outside.

20. The deputies had been dispatched to the apartment as a result of a single anonymous 9-1-1 call claiming that someone had fired a gun outside and gone back into Reese's apartment. (It was later determined that this 9-1-1 call was maliciously placed by a parolee who had quarreled earlier that evening with Reese.)  There was no report of anyone or any residence being hit or targeted by this fictitious gun.

21. A deputy who had coincidentally been nearby Reese's apartment complex when the anonymous 9-1-1 report of "shots were fired" was put out by the dispatchers, advised the other deputies that she had heard no shots.  Additionally, the deputies knew that it was very unusual for there to be only a single 9-1-1 call when there are gunshots heard in a residential neighborhood. Prior to banging on Reese's door, the deputies had searched for and found no evidence of shell casings or any other indicia of a gun being fired in that vicinity.

22. Despite all of this, prior to Deputy Rose banging on Reese's front door with the butt of his heavy metal flashlight, other officers positioned themselves with weapons trained on the front door of Reese's apartment.

23. After hitting the door, Rose stepped aside so as to be out of the line of fire.

24. Deputy Brown, one of the shooters and, based upon the reports, the *de facto* incident commander, explained that it was not due to an oversight that no announcement

was made by the deputies either before or after banging on Reese's door. Brown told an interviewing detective that, "it's just standard practice" and "I think, um traditionally you go up to a door, you knock on it, somebody will say who is it and then you identify yourself as a peace officer, it's just kinda wasted breath anyway to knock because you don't know if they're in the back room anyway." He further explained that "it's just economy of motion and saving your breath because you wait until your challenged and then you tell them who it is."

25. Unfortunately Reese was unaware of this curbstone procedure. Hearing some unknown person(s) banging loudly on his front door in the very early morning hours and unable to see anyone through the peephole, Reese went to the door holding a household knife for his own protection.

26. Within a nanosecond of Reese pulling his front door open, Deputy Brown fired his assault rifle at Reese, followed thereafter by Deputy Rose firing his handgun. None of the other deputies fired their drawn weapons.

27. Reese was hit by a single bullet to his upper chest and fell back into his own apartment. He did not cross the threshold of his home prior to being shot down.

28. Reese does not know which deputy fired the round that struck him. The bullet that hit him passed through his body.

29. After a deputy reached Reese, who was on his back and bleeding, he asked Reese why he had come to the door with a knife in his hand, to which Reese replied, "Because it was 4:30!"

30. Reese was transported by ambulance to Mercy San Juan Hospital where he was operated on and further treated for his injuries. Although hospitalized for 12 days, Reese luckily survived the shooting without sustaining permanently debilitating injuries.

31. A press release issued that day, March 25, 2011, by the Sheriff's Department falsely claimed that the deputies had announced who they were before knocking. On the other hand, the release correctly predicted that Reese would be charged with assaulting an officer with a deadly weapon after he had recovered enough to be jailed.

32. Reese was charged with feloniously assaulting the officers and held on a six-figure bail that he was unable to post. He asserts that these charges were brought in an attempt to insulate the officers from civil liability and to divert public attention away from the incident.

33. The Sacramento County Sheriff's Department has a long-standing practice of pressing for the filing of felony assault charges against individuals shot at by deputies. This is done to justify the deputies' conduct in order to avoid civil consequences and public scrutiny of their actions. Some examples of this are *People v. Blanford*, *People v. Strauch*, and *People v. Clark*.

34. No criminal charges were brought against either deputy. Reese asserts on information and belief that neither of the shooters were disciplined in connection with this incident. Historically, the Sacramento County Sheriff's Department has given deputies commendations for shooting a citizen.

35. Reese, who was facing a potential life sentence due to a record of crimes he committed almost 20 years ago, reluctantly accepted a plea bargain calling for a misdemeanor charge of rudely displaying a knife in exchange for a dismissal of the felony charges and a sentence of "time served."

36. The *de facto* policy and practice of not announcing the presence of deputies at the front door of a home before seeking entry was a cause of Reese's injuries. This practice reflects inadequate training and supervision. The statements of Deputy Brown further suggest a systemic and reckless disregard for the Constitutionally mandated requirements of "knock notice."

37. Plaintiff asserts on information and belief that Deputy Brown was involved in a prior incident in which a deputy recklessly discharged a firearm but which, like this case, did not result in a death. Brown's actions in this instance and the prior one evidences inadequate supervision and training.

38. Sgt. Millican was the approving supervisor. The failure to give any notice before shooting Reese, Reese's location at the time he was shot, as well as the lack of any genuine

exigency, is readily apparent from the reports and the conduct reflected therein, which the sergeant approved.

## VII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Unreasonable Seizure/Excessive Force**
**(Violation of the Fourth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. §1983)**
*(Against Defendants BROWN and ROSE)*

39. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as though fully set forth herein.

40. The actions of defendants Brown and Rose, as alleged herein, interfered with the exercise and enjoyment of plaintiff's civil rights as guaranteed by the Fourth Amendment to the U.S. Constitution. Specifically, defendants, and each of them, interfered with plaintiff's rights when defendants shot Plaintiff at point-blank range when he opened the front door of his own home. Defendants had no justification for the shooting.

41. As a direct and proximate result of said acts and/or omissions by defendants, plaintiff suffered unreasonable interference with his personal liberty, physical injury, pain and suffering, humiliation, emotional distress and other injuries.

42. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages.

### SECOND CAUSE OF ACTION
**Unreasonable Seizure/Excessive Force**
**(Violation of the Cal. Constitution Art. I §§ 1, 7, 13 and Cal. Civil Code § 43:**
**Actionable under Cal. Civil Code § 52.1(b)/Bane Act)**
*(Against Defendants COUNTY OF SACRAMENTO, BROWN and ROSE)*

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42, as though fully set forth herein.

44. The actions of defendants County of Sacramento, Brown and Rose, as alleged herein, interfered with the exercise and enjoyment of plaintiff's civil rights as guaranteed by Article I §§ 1, 7 and 13 of the California Constitution. Specifically, defendants, and each of

them, interfered with plaintiff's rights when defendants, using unjustified force, shot plaintiff at point-blank range when he opened the front door of his own home.

45. Defendants actions constituted an excessive use of force, a violation of plaintiff's right to bodily integrity, and further interfered with plaintiff's personal rights as guaranteed by § 43 of the California Civil Code.

46. The County of Sacramento is vicariously liable for the conduct of its agents, all individual defendants named herein.

47. As a direct and proximate result of said acts and/or omissions by defendants County of Sacramento, Brown and Rose, plaintiff suffered unreasonable interference with his personal liberty, physical injury, pain and suffering, humiliation, emotional distress and other injuries.

48. Defendants' violations of plaintiff's rights as guaranteed by Civil Code § 52.1 (Bane Act) entitles plaintiff to compensatory and punitive damages against the individual defendants (not the County of Sacramento) and attorney fees, all of which are provided for in Civil Code §§ 52.1(b) and 52, and are requested below.

49. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights as secured by Civil Code § 52.1, thereby entitling plaintiff to an award of punitive damages against the individual defendants (not the County of Sacramento) pursuant to Civil Code § 52(b)(1).

### THIRD CAUSE OF ACTION
**Entity Liability/Failure to Supervise**
(*Monell Claim:* **Actionable under 42 U.S.C. §1983**)
(*Against Defendants COUNTY OF SACRAMENTO, SHERIFF JONES, MILLICAN and DOES 6-10*)

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49, as though fully set forth herein.

51. The aforementioned acts of Deputies Brown and Rose as alleged herein, including but not limited to their shooting Reese at point-blank range, all of which violated Reese's rights as protected by the Fourth Amendment (through the application of the

Fourteenth Amendment) of the United States Constitution, occurred as a result of defendants County of Sacramento, Jones, Millican and Does 6-10's failure to supervise their subordinates.

52. The aforesaid defendants knew or had constructive knowledge that their subordinates were engaging in these acts, that their conduct would deprive plaintiff of these rights, and failed to exercise adequate control and supervision, which resulted in Brown and Rose engaging in such conduct.

53. As a direct and proximate result of the aforementioned actions of defendants County of Sacramento, Jones, Millican and Does 6-10, plaintiff suffered injuries and damages as alleged herein.

54. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual defendants (not the County of Sacramento).

**FOURTH CAUSE OF ACTION**
**Entity Liability/Failure to Investigate and Discipline**
(*Monell* claim: Actionable under 42 U.S.C. §1983)
(*Against Defendants COUNTY OF SACRAMENTO, SHERIFF JONES, MILLICAN and DOES 6-10*)

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54, as though fully set forth herein.

56. The aforementioned acts of shooting plaintiff and not identifying themselves as deputies at plaintiff's front door occurred as a result of defendants County of Sacramento, Sheriff Jones, Millican and Does 6-10 failure to adequately investigate and discipline deputies' use of excessive force and unlawful entries.

57. Defendants County of Sacramento, Sheriff Jones, Millican and Does 6-10's failure to investigate and discipline deputies' use of excessive force and unlawful entries amounted to deliberate indifference to the rights and privileges of citizens of the County of

Sacramento to be free of excessive force and unlawful entries into their homes.

58. The inaction of defendants County of Sacramento, Sheriff Jones, Millican and Does 6-10 was a direct and proximate cause of the injuries suffered by plaintiff in that said defendants tacitly encouraged, ratified and/or approved of the violation of plaintiff's rights and/or failed to adequately investigate and discipline the use of excessive force to prevent the occurrence of the constitutional violations alleged above.

59. Defendants County of Sacramento, Sheriff Jones, Millican and Does 6-10 knew or had constructive knowledge that such conduct was unjustified and would result in violations of plaintiff's constitutional rights.

60. As a direct and proximate result of the aforementioned practices of defendants County of Sacramento, Sheriff Jones, Millican and Does 6-10, plaintiff suffered injuries and damages as alleged herein.

61. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual defendants (not the County of Sacramento).

**FIFTH CAUSE OF ACTION**
**Monell Liability - De Facto Policies**
**Actionable under 42 U.S.C. 1983)**
(*Against Defendants COUNTY OF SACRAMENTO, SHERIFF JONES and DOES 1-5*)

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 61, as though fully set forth herein.

63. The aforementioned acts and/omissions of defendants County of Sacramento, Millican, Brown, Rose and Does 1-5 as alleged herein, including but not limited to the shooting of plaintiff, the failure to announce the presence of deputies, and the use of criminal prosecutions to deflect attention away from assessing officer culpability for shootings, resulted in the violation of plaintiff's Fourth Amendment rights as a result of defendants County of Sacramento, Jones and Does 1-5 implementing or condoning the

conduct alleged herein by Brown and Duncan, as well as the failure to investigate and the use of criminal prosecutions to deflect attention away from officer culpability on shooting cases.

64. Defendants County of Sacramento, Jones and Does 1-5 knew or had constructive knowledge that implementing or condoning these informal polices/practices would cause deputies to deprive individuals, including the plaintiff, of their constitutional rights.

65. As a direct and proximate result of the aforementioned practices of defendants County of Sacramento, Sheriff Jones, and Does 1-5 Plaintiff suffered injuries and damages as alleged herein.

66. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual defendants (not the County of Sacramento).

### SIXTH CAUSE OF ACTION
**Battery – California State Law**
*(Against Defendants County of Sacramento, Brown and Rose)*

67. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 66, as though fully set forth herein.

68. The conduct of defendants Brown and Rose as alleged herein, including but not limited to defendants' actions of shooting plaintiff at point-blank range while plaintiff was within threshold of his own home, constituted a battery.

69. Said conduct was a proximate cause of plaintiff's damages and injuries as alleged herein.

70. The County of Sacramento is vicariously liable for the conduct of its agents, all individual Defendants named herein.

71. The aforementioned acts and/or omissions of said defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of plaintiff's rights entitling plaintiff to an award of punitive damages against the individual defendants

(not the County of Sacramento).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each defendant, jointly and severally, in the amount proven at trial;

2. For punitive and exemplary damages against each individual who is a named defendant in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

3. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

4. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated:  March 21, 2013			Respectfully submitted,


			/s/ Stewart Katz
			Stewart Katz,
			Attorney for Plaintiff


## DEMAND FOR TRIAL BY JURY

Plaintiff Robert Reese hereby demands trial by jury.

Dated:  March 21, 2013
			/s/ Stewart Katz
			Stewart Katz,
			Attorney for Plaintiff