UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT I. REESE, JR.,

          Plaintiff,

    v.

COUNTY OF SACRAMENTO, Sacramento County Sheriff's Department Deputy DUNCAN BROWN (Badge #1220), and Sacramento County Sheriff's Department Deputy ZACHARY ROSE (Badge #832),

          Defendants.

No.  2:13-cv-00559-GEB-DAD

**ORDER ON DEFENDANTS' MOTIONS IN LIMINE**[*]

Defendants move in limine for a pretrial order precluding the admission of certain evidence at trial. Each motion is addressed below.

**Motion in Limine No. 1**

Defendants "move to exclude any and all evidence . . . regarding [Plaintiff's] los[t] wages or future earning power . . . based on his waiver of those damages, failure to provide discovery responses with regard [thereto,] and failure to designate an expert to testify about those damages." (Defs.' MIL No. 1 1:26-2:3, ECF No. 83.)

Decision on this motion is unnecessary since Plaintiff

---

[*]    These motions are suitable for decision without oral argument.

states in his statement of non-opposition that he "does not intend to present evidence of lost wages or lost earning capacity at trial." (Pl.'s Statement of Non-Opp'n to Defs.' MIL No. 1, ECF No. 128.)

### Motion in Limine No. 2

#### a) Number of Witnesses Concerning Plaintiff's Medical Treatment

Defendants indicate Plaintiff has listed three physicians and five registered nurses to testify concerning Plaintiff's treatment at Mercy San Juan Hospital. Defendants argue: "allowing all of these treating physicians and nurses [to testify] would be redundant and cumulative, and in turn, runs the risk of causing Defendants undue prejudice under [Federal Rule of Evidence ("FRE")] 403." (Defs.' MIL No. 2 2:20-21, ECF No. 84.) Defendants request an order limiting Plaintiff

> to offer[] a single physician and a single nurse to testify about his treatment so that, by the sheer number of witnesses identified, Plaintiff is not able to play on the emotions of the jury with regard to dramatizing the treatment he received following the shooting . . . in support of his noneconomic damages claim.

(Id. at 22-25.) "Alternatively, should [more than] one witness testify on the matter, Defendants []request a hearing [under FRE] 402 be held to explore whether the testimony is not cumulative." (Id. at 2:25-27.)

Plaintiff rejoins:

> Plaintiff does not intend to present cumulative testimony. Defendants argue that the testimony will be cumulative, but have no evidentiary support for that argument. Defendants did not depose the witnesses whose

2

1                testimony is the subject of this motion in
limine. Accordingly, Plaintiff contends that
2                the Court will be better situated during the
actual trial to assess whether the testimony
3                is cumulative or not.

4  (Pl.'s Opp'n to Defs.' MIL No. 2 2:24-3:1, ECF No. 129 (internal

5  quotation marks and citation omitted).)

6        Defendants have not shown they are entitled to a

7  pretrial ruling on this issue or a FRE 402 hearing prior to the

8  referenced witnesses' testimony.

9        **b)**   **Character Witnesses**

10       Defendants state "Plaintiff has . . . identified

11  [certain witnesses] . . . to testify about how the shooting has

12  impacted [his] 'quality of life.'" (Defs.' MIL No. 2 3:3-5.) "To

13  the extent these [witnesses] are offered to . . . testi[fy]

14  regarding Plaintiff's character, Defendants request [such]

15  testimony be expressly excluded pursuant to [FRE] 404 as . . .

16  improper character testimony." (<u>Id.</u> at 3:6-8.) Further, "[t]o the

17  extent Plaintiff proffers these witnesses to testify about how

18  [his] life has changed for purposes of damages, Defendants

19  []request a hearing [under FRE] 402 be held to explore whether

20  the witness[es] ha[ve] the requisite foundation [concerning

21  Plaintiff's] life both before and after the incident." (<u>Id.</u> at

22  3:9-12.)

23        Plaintiff counters:

24                if Defendants wanted to challenge the
foundation of the testimony or opinions of
25                any witness, then the Defendants should have
deposed that person. Then Defendants could
26                demonstrate, with reference to a deposition
transcript, that the witness did not have
27                foundation to offer certain testimony.
However, Defendants did not take the
28                depositions of these witnesses. Accordingly,

1
2
3
> Defendants have no evidentiary support for
> their objection to the testimony on the
> grounds of foundation. For this reason, their
> motion is not persuasive and should be
> denied.

4  (Pl.'s Opp'n to Defs.' MIL No. 2 3:16-23.)

5
6
7  Defendants have neither shown that a pretrial ruling on this matter should issue nor that a FRE 402 hearing should be conducted.

8  **Motion in Limine No. 3**

9
10
11
12
13
14  Defendants move "for an [o]rder precluding Plaintiff . . . from introducing any evidence or making any reference to attorney fees or costs incurred by Plaintiff during this litigation[,]" arguing, *inter alia*: "[t]he proper method and time . . . for resolving such fees and expenses is through a post-trial motion." (Defs.' MIL No. 3 1:23-26, 2:4-5, ECF No. 85.)

15
16
17
18
19  Decision on this motion is unnecessary since Plaintiff states in his statement of non-opposition that he "does not intend to present evidence of attorney's fees or costs incurred by Plaintiff to the jury." (Pl.'s Statement of Non-Opp'n to Defs.' MIL No. 3, ECF No. 130.)

20  **Motion in Limine No. 4**

21
22
23
24
25
26
27
28  Defendants move to preclude testimony by the "'Person Most Knowledgeable/Custodian of Records' for medical billing at Mercy San Juan Medical Center[,]" arguing "[t]his individual was never identified during . . . discovery[,]" but was subsequently "included on Plaintiff's Proposed Witness list for trial." (Defs.' MIL No. 4 1:24-28, 2:10-14, ECF No. 86.) Defendants further contend that the Best Evidence Rule precludes said witness from testifying about the contents of Plaintiff's medical

4

1  billings since "Plaintiff has not identified any medical billing

2  records as part of his proposed trial exhibits." (Id. at 4:17-21,

3  5:12-16.)

4          Plaintiff responds:

5          Plaintiff does not dispute Defendants'
          assertion that the Person Most Knowledgeable
6          (PMK)/Custodian of Records for Mercy San Juan
          Medical Center was not on Plaintiff's initial
7          disclosure list. The PMK was not identified
          at that point, as he or she was not and is
8          not a known witness. Had that individual been
          a known person as opposed to a designee of
9          the entity, he or she would have been listed.
          The Defendants' recognition of this reality
10         is apparent in their own witness list, . . .
          in which witness number 20 is identified as
11         "Custodian of Records/Person Most Qualified
          at County Medical Indigent Services Program,
12         to be identified by subpoena." No such person
          was ever identified on any Rule 26 disclosure
13         or discovery response Defendants provided in
          the course of the litigation. . . .
14
          Furthermore, . . . during discovery,
15         Plaintiff obtained and provided his medical
          bills from the Hospital to Defendants in
16         response to Sacramento County's First Request
          For Production of Documents on or about
17         October 31, 2014. Because the records . . .
          are voluminous and potentially confusing to a
18         jury (numbering 87 pages), Plaintiff's
          counsel concluded that the best and most
19         efficient method of introducing the evidence
          at trial would be to subpoena the Hospital's
20         PMK. In other words, Plaintiff provided the
          billing records during discovery and
21         Defendants knew that the costs for services
          rendered by the Hospital were a component of
22         Plaintiff's damages throughout this case. For
          these reasons, there was no intentional
23         failure to disclose and a Rule 37 sanction
          does not apply as the "failure to disclose,"
24         if one even exists, was, at the very least
          given the actual facts, substantially
25         justified or harmless. . . .

26         Additionally, . . . the PMK's testimony
          about the Hospital's valuation of the
27         services rendered is not expert testimony.

28  (Pl.'s Opp'n to Defs.' MIL No. 4 1:27-3:2, ECF No. 131.)

1   Plaintiff further counters: "[the Best Evidence Rule, FRE] 1002

2   does not prohibit oral or written evidence to prove something

3   other than the content of a writing, even if the writing is

4   arguably better or best evidence. In other words, courts do not

5   bar oral proof of a matter merely because it is also provable by

6   a writing." (Id. at 3:17-19.)

7        The Court need not decide whether the subject PMK was

8   required to be disclosed since Plaintiff has shown that any

9   failure to disclose the PMK is harmless under the circumstances.

10  See Lanard Toys, Ltd. v. Novelty, Inc., 375 Fed. App'x 705, 713

11  (9th Cir. 2010) ("Among the factors that may properly guide a

12  district court in determining whether a violation of a discovery

13  deadline is . . . harmless are: (1) prejudice or surprise to the

14  party against whom the evidence is offered; (2) the ability of

15  that party to cure the prejudice; (3) the likelihood of

16  disruption of the trial; and (4) bad faith or willfulness

17  involved in not timely disclosing the evidence."). Plaintiff

18  asserts he produced his billing records from Mercy San Juan

19  Medical Center during discovery. Further, any best evidence rule

20  objection is not decided now.

21  **Motion in Limine No. 5**

22       Defendants seek to "preclude[e] Plaintiff . . . from

23  proffering evidence or making any reference to previous charges,

24  complaints or lawsuits against the County of Sacramento,

25  Sacramento County Sheriff's Department, Sheriff Scott Jones, the

26  individual named Defendants, or third party employees of the

27  Sacramento County Sheriff's Department." (Defs.' MIL No. 5 1:25-

28  2:2, ECF No. 87.) Defendants argue, inter alia, that such

1  evidence is irrelevant since Plaintiff's <u>Monell</u> claims were

2  dismissed, and any prior complaints are unrelated to Plaintiff's

3  remaining claims. (<u>Id.</u> at 3:25-4:5.)

4      Decision on this motion is unnecessary since Plaintiff

5  states in his statement of non-opposition that he "does not

6  intend to present evidence of previous charges, complaints or

7  lawsuits against SCSD, County of Sacramento, the sheriff, or

8  defendants." (Pl.'s Statement of Non-Opp'n to Defs.' MIL No. 5,

9  ECF No. 132.)

10  **Motion in Limine No. 6**

11      Defendants move to preclude Plaintiff's police

12  practices expert, Roger Clark, from offering certain opinions at

13  trial. (Defs.' MIL No. 6 2:3-6, ECF No. 88.) Defendants' multiple

14  arguments raised in this in limine motion are addressed in turn.

15      First, Defendants move to preclude Mr. Clark from

16  giving opinion testimony concerning whether the officer

17  defendants' "conduct was 'objectively inappropriate,'

18  'unreasonable' or 'excessive'" on the ground that such testimony

19  comprises "impermissible legal conclusions." (<u>Id.</u> 4:1-4.)

20  Defendants argue:

21          [FRE] 704(a) permits opinion testimony
22      that embraces an ultimate issue to be decided
        by the trier of fact. . . . That said, an
23      expert witness cannot give an opinion as to
        her legal conclusion, i.e., an opinion on an
24      ultimate issue of law. . . .

25          In his Rule 26 report, Clark opines:
        "The use of lethal force was objectively
26      inappropriate because: [Plaintiff] did not
        present an immediate threat of death or great
27      bodily injury to the officers or any other
        person; and there was no direction for
28      [Plaintiff] to drop the knife or "freeze"
        before using deadly force." The report

7

1          continues to characterize . . . the officer's
           conduct as "inappropriate." The report also
2          refers   to   the   "excessive   wounding
           [Plaintiff]." Clark also opines in the report
3          that    " . . . their   force   was   grossly
           inappropriate, excessive, and unreasonable."

4
           In his deposition, Roger Clark confirmed
5          those opinions . . . .

6          . . . .

7          Defendant[s] request that Roger Clark's
           testimony be limited to what he believes
8          acceptable force was, and what . . . course
           of conduct [he believes] would have been
9          appropriate, but limit any opinion testimony
           by Clark as to whether conduct was
10         "objectively inappropriate," "unreasonable"
           or "excessive." These are impermissible legal
11         conclusions that should be excluded. . . .

12         Further, whether the deputies violated
           Plaintiff's constitutional rights is an
13         ultimate issue of law on which Clark may not
           opine. Similarly, Clark may not give his
14         opinion as to whether the deputies' use of
           force against [Plaintiff] was "reasonable."
15         Here,   "reasonable"   has   an   eminently
           significant legal connotation such that
16         Clark's opinion as to the reasonableness of
           the deputies' use of force constitutes a
17         legal conclusion that risks usurping the
           jury's role. Likewise, Roger Clark should be
18         prohibited from opining that the deputies
           "should have" used less force, or some
19         alternative force, relative to constitutional
           standards of reasonableness.

20

21     (Id. at 2:10-4:17 (internal quotation marks, citations, and

22     brackets omitted).)

23         Second, Defendants seek to preclude "any opinion by

24     Roger   Clark   criticizing   Defendants['] 'tactical

25     approach' . . . because it is not relevant to the . . . claim

26     [of] excessive force." (Id. at 4:21-23.) Defendants argue that

27     none of the factors the jury is to consider in determining

28     whether the defendant officers' use of force was excessive

8

1  "speak[s] to whether a different tactical approach should have

2  been used[,]" and "to isolate and separately analyze the approach

3  to the door, would unduly confuse the jury." (Id. at 6:2-22.)

4          Third, Defendants "submit that any opinion by Roger

5  Clark that an 'announcement' was required prior to knocking on

6  Plaintiff's front door, or that the individual Defendants should

7  have identified themselves prior to knocking on the front door

8  should be excluded because it misstates the case law, and because

9  an expert also may not opine to the jury about legal standards,

10  or what the 'law' requires." (Id. at 7:8-12.)

11          Fourth, Defendants move to preclude Mr. Clark "from

12  opining about the conduct of Sgt. Millican and supervisory

13  liability pursuant to [FRE] 401 and 403 because . . . this Court

14  has dismissed all claims against Sgt. Millican with prejudice."

15  (Id. at 8:14-17.)

16          Fifth, Defendants request "an Order precluding Roger

17  Clark from opining about the County of Sacramento, or SCSD's,

18  review and investigation of the incident, training, and decision

19  whether to discipline and/or retrain the involved deputies" under

20  FREs 401 and 403, arguing the "Court dismissed the Monell

21  claim[,] . . . and Plaintiff abandoned all claims against Sheriff

22  Scott Jones." (Id. at 9:12-16.)

23          Plaintiff states in his opposition brief that Mr. Clark

24  "will not offer opinions regarding Sgt. Millican, ratification,

25  misconduct by supervisors, failure to train, customs and

26  practices, or failure to discipline." (Pl.'s Opp'n to Defs.' MIL

27  No. 6 6:13-16, ECF No. 133.) Therefore, decision on Defendants'

28  fourth and fifth arguments is unnecessary.

Concerning the remainder of the motion, Plaintiff responds, *inter alia*:

> Mr. Clark intends to testify as to the generally accepted training and standards which inform the conduct of deputies such as the individual Defendants. By necessity, the deputies' training, and the policies and procedures by which they should comply, to some extent[,] include legal principles that encompass the deputies' use of force because they are designed in part to minimize a municipality's liability for excessive force. However, a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.

> Further, Mr. Clark's testimony will take the appropriate hypothetical form, e.g., if the deputies acted as described by Plaintiff, then they acted contrary to POST standards. Since Mr. Clark's testimony will take the appropriate form, the province of the jury is not invaded; Mr. Clark's testimony simply helps [the jury] to understand the implications of the different factual circumstances alleged by the parties. Accordingly, Mr. Clark['s] testimony will not . . . tell[] the jury what result to reach. Mr. Clark is familiar with policies and procedures in place at the time of the incident, and can testify as to what procedures were mandated for deputies to follow in hypothetical circumstances matching the circumstances of this case, such that the jury may infer that certain required procedures were not followed (which would be circumstantial evidence militating in favor of liability).

> For the reasons above, Mr. Clark's opinions . . . should not be excluded by reason of touching on an ultimate issue.

> . . . [Further,] Defendants have not persuasively argued that alternative tactical approaches are not relevant in terms of an excessive force claim. Indeed, the model instructions *instruct* the jury to consider alternative methods as a factor. Mr. Clark's

1
2
3
4

>testimony can help the jury understand which alternative methods were reasonably available from a police practices standpoint. For this reason, the testimony of Roger Clark regarding alternative tactical approaches should not be excluded.

5
6

(Id. at 4:22-5:21, 5:28-6:10 (internal quotation marks, citations, and brackets omitted).)

7
8
9
10

Since it is unclear what questions Mr. Clark will be asked and whether any response could be challenged, a sufficient factual context is lacking to decide before trial the remaining portions of this motion.

11

**Motion in Limine No. 7**

12
13
14
15
16

Defendants seek to preclude Plaintiff's "blood splatter expert, Peter Barnett, from offering any [FRE 702] opinions at trial." (Defs.' MIL No. 7 1:24-27, ECF No. 89.) Specifically, Defendants "request the following testimony by Barnett be excluded":

17
18
19
20
21

>(1) whether Plaintiff was moving in any particular direction at the time he was shot; (2) whether he was standing still at the time he was shot; (3) whether Plaintiff was standing in any particular location at the time he was shot; (4) any specific source of any blood drop; or (5) the timing of those blood drops.

22
23
24
25
26
27
28

(Id. at 2:8-11.) Defendants argue Mr. Barnett's opinions "are not supported by any scientific reliability[,]" but instead "offer[] a series of examples of what 'could have' occurred." (Id. 7:1-3, 7:8.) Defendants contend: "the opinions offered by Mr. Barnett . . . are sheer conjecture and speculation about where Plaintiff was standing, [and] whether Plaintiff moved after he was shot." (Id. at 7:13-15.) Defendants further argue that Mr.

Barnett's testimony concerning the "timing of [Plaintiff's] blood drops[ and] Plaintiff's location at the time blood dropped to the floor[] is unnecessary and not helpful to the jury because it is a matter 'of common sense.'" (Id. at 7:25-8:1.)

Plaintiff responds that Mr. "Barnett's testimony is both scientifically reliable and relevant[,] and Defendant[s'] motion should be denied." (Pl.'s Opp'n to Defs.' MIL No. 7 1:25-26, ECF No. 134.) Plaintiff argues, inter alia:

> In arguing that Barnett's conclusions are unreliable, Defendants do not address the Daubert factors, but rather, assert that Barnett's proposed testimony is scientifically unreliable because there are certain questions which he could not and did not conclusively answer.
>
> Barnett's "Conclusions" disclosed in his Rule 26 Report are, in relevant part as follows: "The only physical evidence of the location of Mr. Reese at the time he was shot or after he was shot are blood droplets on the floor and the carpeting inside the apartment. This trail of blood drops extends from a few inches inside the front door threshold to a position in the approximate center of the living room area. Only one of these droplets . . . indicate[s] possible movement of Mr. Reese. This droplet suggests that Mr. Reese was moving towards the interior of the apartment when that blood dripped from his injury, or perhaps that he swung his hand that had been in contact with the bleeding injury." Barnett Rule 26 Report (ECF No. 89-1) at 4.b.
>
> The stated purpose of Barnett's examination was "Determination of the position of Mr. Reese when he was shot." . . .
>
> Ultimately, Barnett concluded there was no physical evidence outside the front door of the apartment that would indicate [Plaintiff was] outside [the] apartment when he was shot, and that the only blood droplets . . . indicating possible movement of [Plaintiff] suggested that [he] was either

12

> moving towards the interior of the apartment
> when that blood dripped from his injury, or
> that those droplets fell when he swung his
> hand that had been in contact with the
> bleeding injury. See Barnett Rule 26 Report
> at 2, 4. Contrary to Defendants' assertion,
> Barnett based his conclusions on various
> facts, all of which are set forth in the
> "Examination and Results" section of his Rule
> 26 Report. See Barnett Rule 26 Report at 2-5.
>
> . . . .
>
> . . . Barnett's conclusions are neither
> speculative nor based on conjecture. His
> conclusions are based on . . . facts gleaned
> from the identified photos, diagrams, crime
> scene investigator reports and Plaintiff's
> medical reports. . . . "Uncertainty" goes to
> the weight of the evidence rather than its
> admissibility.

(Id. at 2:15-4:20.)

The in limine record lacks sufficient factual context for a pretrial ruling concerning the admission of Mr. Barnett's proposed testimony under FREs 701 and/or 702.

**Motion in Limine No. 8**

Defendants move to "preclude Plaintiff . . . from testifying as to any of his own opinions regarding whether or not the force used was 'excessive' or 'unreasonable'" both as an expert witness . . . or as a lay witness. (Defs.' MIL No. 8 1:25-2:2, ECF No. 90.) Defendants argue, inter alia, that Plaintiff "is not a qualified expert[,]" and such testimony "would invade the province of the jury and constitute an improper legal conclusion." (Id. at 2:8-9, 4:23-5:6.) Defendants also argue that "Plaintiff's testimony as to whether the use of force was excessive or unreasonable . . . should be excluded under [FRE] 403" as "[a]ny [such] testimony by Plaintiff . . . would serve only to confuse the issues and the jury." (Id. at 4:16-23.)

1          Plaintiff rejoins:

2               Defendants take for granted that
          Plaintiff's testimony (if he offers it)
3          regarding the force that was used would
          constitute an expert opinion. Plaintiff
4          disagrees. Plaintiff submits that
          observations regarding the use of force are
5          not the exclusive province of experts.
          Plaintiff can testify about his own
6          observations and experiences during the
          incident from personal knowledge. He can
7          testify, for example, that he was not doing
          anything that would have invited deadly force
8          under the circumstances. Accordingly, his own
          observations regarding the force that was
9          used do not necessarily constitute
          "opinions."

10
               Even if [Plaintiff's] observations
11          regarding the force that was used would
          constitute "opinions" within the meaning of
12          the Federal Rules of Evidence, Rule 701
          allows a lay witness to offer opinions that
13          are (a) rationally based on the witness's
          perception, (b) helpful to the jury, and (c)
14          not based on scientific, technical, or other
          specialized knowledge within the scope of
15          expert testimony. In other words, even if it
          was an "opinion" to state that shooting him
16          was unreasonable or excessive force,
          Plaintiff contends that his own opinion is
17          founded in his own personal knowledge,
          observations, and experiences during the
18          incident. Further, Plaintiff's observations
          would be helpful to the jury since he was
19          there and he is the only non-law-enforcement
          witness to the shooting. Accordingly,
20          Defendants have not shown that the disputed
          evidence is "inadmissible on all potential
21          grounds," so the motion should be denied.

22   (Pl.'s Opp'n to Defs.' MIL No. 8 3:3-24, ECF No. 135.)

23          This motion lacks the concreteness required for an in

24   limine ruling.

25        **Motion in Limine No. 9**

26          Defendants move to preclude Plaintiff's eight non-

27   retained medical providers from testifying on the grounds that

28   their expert disclosures did not comply with Federal Rule of

1    Civil Procedure ("FRCP") 26(a)(2)(C). (Defs.' MIL No. 9 1:24-27,

2    2:3-10, ECF No. 91.) Defendants argue:

3           Witnesses, who are not retained but
            nonetheless provide expert testimony, must
4           comply with [FRCP] 26(a)(2)(C). Such non-
            retained experts need not submit a written
5           report but must disclose: "(i) the subject
            matter on which the witness is expected to
6           present evidence under [FRE] 702, 703, or
            705; and (ii) *a summary of the facts and
7           opinions to which the witness is expected to
            testify*." See F. R. Civ. P. 26(a)(2)(C)
8           (emphasis added).

9                . . . .

10               Here, Plaintiff['s disclosures] . . .
            for each non-retained expert . . . omitted a
11          summary of facts and opinions to which the
            witness[es] will testify, in contravention of
12          the requirements of [FRCP] 26.

13   (Id. at 3:14-4:26.) In the alternative, Defendants argue:

14          to the extent the[se witnesses] are allowed
            to testify, [they] should only be permitted
15          to testify as to the treatment that was
            provided to Plaintiff[ and] the diagnosis of
16          Plaintiff's conditions, and should not be
            allowed to testify about opinions that would
17          be provided by a retained expert[, which] is
            the type of testimony that requires a report
18          under F. R. Civ. P. 26.

19   (Id. at 5:8-12.)

20          Plaintiff rejoins:

21          The[ subject] disclosures substantially
            complied with [FRCP] 26(a)(2)(C) because each
22          non-retained expert at issue is solely a
            percipient witness within a narrow time
23          window (eight days), at a specific place
            (Mercy San Juan Hospital), and treated
24          plaintiff solely in regard to a single injury
            (his gunshot wound). There are no additional
25          facts or opinions to summarize for any of the
            non-retained expert/ percipient witnesses at
26          issue.

27               . . . .

28               . . .  [T]he non-retained experts

                              15

1    disclosed are not going to testify about
     matters outside the scope of their treatment
2    of the patient. Accordingly, there were no
     additional summaries of facts and opinions to
3    provide. . . .

4
     (Pl.'s Opp'n to Defs.' MIL No. 9 2:21-3:21, ECF No. 136.)

5
     Plaintiff further counters:

6
7            where the failure, if any, was only a
             technical failure, and there was no unfair
8            surprise, Plaintiff's witnesses should not be
             excluded.

9            Defendants claim they were prejudiced
10           due to the lack of summary of facts and
             opinions for each non-retained expert /
             percipient witness, but do not describe or
11           explain how they were prejudiced. . . .

12           . . . .

13           . . . Here, there is no bad faith or
             willfulness involved; additional summaries
14           were not provided solely because none of the
             thirteen non-retained expert / percipient
15           witnesses will testify as to matters outside
             the scope of their treatment and assessment
16           of Plaintiff as a percipient witness.
             Disruption at trial is also not a factor in
17           this case due to its current procedural
             posture.

18
             As to prejudice or surprise, despite
19           Defendants' unexplained claim of prejudice,
             there is none. As to each of the thirteen
20           non-retained expert / percipient witnesses at
             issue, Plaintiff identified the subject
21           matter of the testimony as the medical
             assessment and treatment of Plaintiff at a
22           specified place and for the specified
             purpose. . . . None of the non-retained
23           expert / percipient witnesses at issue will
             testify as to Plaintiff's present medical
24           condition, future medical condition,
             reasonableness of medical expenses, or any
25           other facts or opinions beyond the treatment
             they rendered. Moreover, causation is not a
26           disputed issue in this case.

27           . . . [Also, e]ach treatment provider's
             specific involvement with Plaintiff's medical
28           treatment was previously disclosed and

                                16

summarized in a chart provided to Defendants.

(Id. at 4:7-5:21 (citations omitted).)

The court need not decide whether the subject witnesses' disclosures are sufficient under FRCP 26(a)(2)(C) since Plaintiff has shown that any deficiency is harmless under the circumstances. See Lanard Toys, Ltd., 375 Fed. App'x at 713 (listing "factors" a court may consider "in determining whether a violation of a discovery deadline is . . . harmless"). Plaintiff states that none of the witnesses will "give any testimony outside the scope of their assessment and treatment of Plaintiff" over an eight day period in regard to a single injury, and Plaintiff provided Defendants during the discovery period with a summary chart of each witness's treatment. Accordingly, this motion is DENIED.

**Motion in Limine No. 10**

Defendants "seek to restrict Plaintiff's claims for past medical expenses to those that have actually been paid, and limit Plaintiff to introduce into evidence only the paid amounts of past medical bills." (Defs.' MIL No. 10 1:27-2:1, ECF No. 92.) Defendants argue, *inter alia*,[1] "that under Howell v. Hamilton Meats & Provisions, Inc., 52 Cal. 4th 541 (2011) and Corenbaum v. Lampkin, 215 Cal. App. 4th 1308 (2013), the [gross] amount of past medical expenses billed for Plaintiff's treatment [(versus the amount paid and accepted by the providers as payment in full)] is inadmissible." (Id. at 2:17-24.)

---

[1]     Defendants argue Plaintiff's gross total of past medical bills should also be excluded for reasons raised in their fourth motion in limine. Discussion and decision concerning those arguments is not repeated here.

1    Plaintiff responds that "Defendants cite no federal

2  cases" in support of their argument, and "[e]ven where the total

3  amount paid is less than the [gross amount] of medical care, the

4  [gross amount] may still be admissible as evidence of the nature

5  of a plaintiff's injuries." (Pl.'s Opp'n to Defs.' MIL No. 10

6  3:5-11, ECF No. 137.) Plaintiffs also argue:

7         On this motion, Defendants have the
          burden of establishing that the disputed
8         evidence is inadmissible on all potential
          grounds. Since Defendants [have not shown]
9         that the medical providers have . . .
          accept[ed] a lesser amount as full payment,
10        they have not shown that there is no proper
          use for the disputed evidence.
11

12  (Id. at 3:23-27.)

13    Defendants have not shown they are entitled to a

14  pretrial ruling on this issue.

15  **Motion in Limine No. 11**

16    Defendants "move to exclude . . . the photographs

17  identified as Plaintiff's Trial Exhibits Nos. 42, 43, 44, 45 and

18  46[,] which depict Plaintiff receiving treatment at Mercy San

19  Juan Hospital following the incident on March 25, 2011[,] and

20  Plaintiff's wound" under FREs 401 and 403. (Defs.' MIL No. 11

21  1:25-2:1, ECF No. 93.) Defendants argue:

22        Plaintiff has identified four separate photos
          of himself receiving serious medical
23        treatment while in the hospital at Mercy San
          Juan. The photographs of Plaintiff in a
24        hospital bed receiving treatment after he was
          shot do not have any tendency to prove a fact
25        of consequence at issue in this action. No
          one disputes that Plaintiff was shot as a
26        result of the incident. Likewise, no one
          disputes that Plaintiff sustained a gunshot
27        wound and received a treatment. . . .

28        . . . .

                          18

1          . . . . To the extent that these
          photographs are deemed to have some probative
2         value, Defendants respectfully request the
          photographs should be excluded under [FRE]
3         403 because they are fairly dramatic
          depictions of the treatment received by
4         Plaintiff and Plaintiff's wound and will have
          a tendency to inflame the emotions of the
5         jury. In this regard, there is a substantial
          risk of unfair prejudice should Plaintiff be
6         permitted to offer these photographs at
          trial.

7

8    (Id. at 2:8-27, ECF No. 93.)

9              Plaintiff responds:

10             As a preliminary matter, the location of
          the gunshot wound and the trajectory of the
11        bullet through Plaintiff's body is a critical
          part of the Plaintiff's case. Plaintiff
12        contends that the location of the bullet
          strike, together with the blood and forensic
13        evidence, clearly establishes that he was not
          outside the house lunging at the deputies at
14        the time he was shot. This in turn undermines
          the defendants' credibility and makes their
15        account of the incident less probable.
          Plaintiff also contends that the bullet
16        strike bears on his damages, including his
          pain and suffering. Accordingly, Plaintiff
17        contends that a small number of photographs
          are relevant.

18
               With respect to the issue of unfair
19        prejudice, Plaintiff contends that the images
          are not intended to arouse the passions of
20        the jury and inflame them against the
          Defendants.

21

22             . . . .

23             Plaintiff does not intend to offer into
          evidence all of the hospital photos, but
24        instead, only four photos, only three of
          which even show any blood. The four photos
25        included by Plaintiff on his exhibit list
          catalogue plaintiff's condition at the
26        hospital and the location of the shots,
          together with the results of the medical
27        operation that sealed the wound.

28   (Pl.'s Opp'n to Defs.' MIL No. 11 2:24-4:1, ECF No. 138.)

1          Defendants have not shown that the subject photographs

2    should be excluded under FRE 403. Therefore, this motion is

3    DENIED.

4          **Motion in Limine No. 12**

5          Defendants move to exclude Plaintiff's trial exhibits

6    Nos. 12 and 13 under FREs 401 and 403, arguing as follows:

> Plaintiff's Proposed Trial Exhibit No.
> 12 is a Second Amended Deposition Notice to
> the County of Sacramento requesting the
> deposition of "The person(s) most
> knowledgeable within the County of
> Sacramento[,] Sacramento County Sheriff's
> Department Internal Affairs, about the
> "administrative review" of the Officer
> Involved Shooting ("OIS") investigation of
> the shooting of Plaintiff, Robert Reese."
> Plaintiff's Proposed Trial Exhibit No. 13 is
> a copy of Defendants' Objections to that
> Notice. Those objections provide:
> ""Objection. Vague and overly broad as to
> time. Pursuant to meet and confer efforts
> between the parties, Defendant COUNTY OF
> SACRAMENTO is of the understanding that
> Plaintiff is seeking the Person Most
> Knowledgeable within the County of
> Sacramento/Sacramento Sheriff's Department
> Internal Affairs regarding the review which
> was actually conducted in regards to the
> incident arising out of the Officer Involved
> Shooting involving Plaintiff. Without waiver,
> Defendant COUNTY OF SACRAMENTO is able to
> produce somebody regarding the Professional
> Standards Bureau (a.k.a. 'Internal Affairs')
> level of review of the SSD Report #11-62631
> only, as distinguished from an executive
> level o[f] review. The County is unable to
> produce a PMK regarding the administrative
> review, if any, was actually conducted at the
> executive level of SSD report #11-62631."

> . . . Here, the Monell claim against the
> County was dismissed with prejudice at
> summary judgment. Any evidence that would
> relate to administrative review at an
> executive level—i.e. whether the involved
> deputies were investigated to determine
> whether County policy was followed, to
> determine whether retraining was required, or
> to determine whether any involved SCSD

1   personnel should be subject to discipline—is
    irrelevant to the claims that remain for
2   trial. Further, Defendants anticipate that
    these documents will be used by Plaintiff, or
3   his counsel, to suggest that the lack of
    executive level administrative review of the
4   officer involved shooting in this case is
    commonplace within SCSD—as suggestion and
5   argument that is completely improper given
    the dismissal of the <u>Monell</u> claim.

6

        . . . .

7

        To the extent that these discovery
8   documents are deemed to have some probative
    value, Defendants respectfully request the
9   Notice and Objections be excluded under [FRE]
    403 because [they] will confuse the issues
10  before the jury and are unfairly prejudicial.
    As explained above, since the <u>Monell</u> claim
11  has been dismissed, evidence related to
    whether an executive level administrative
12  review to assess whether policy was followed,
    whether training is needed[,] or whether
13  discipline needs to be meted out . . . does
    not relate at all to whether Plaintiff can
14  prove that Deputy Rose or Brown used
    unreasonable force on the morning of March
15  25, 2011.

16      In fact, in light of the substantial
    media that police practices have received
17  across the county over the last 18 months,
    commentary by [Plaintiff's] counsel in this
18  case that SCSD exercised its discretion and
    did not perform an internal affairs
19  investigation of the involved officers runs
    the risk of emotionally inflaming the jury.
20  This is particularly dangerous in light of
    the fact that the <u>Monell</u> claim was
21  dismissed . . . .

22  (Defs.' MIL No. 12 1:25-27, 2:20-4:19, ECF No. 94 (citations

23  omitted).)

24      Plaintiff rejoins that "Defendants take for granted

25  that the challenged exhibits bear only on the <u>Monell</u>-related

26  issues that were dismissed from this case." (Pl.'s Opp'n to MIL

27  No. 12 2:24-26, ECF No. 139.) Plaintiff argues:

28

                                21

1
2
3
4
5
6
7
8
9
10
11

>           According to the County's designated
> representative produced pursuant to [FRCP]
> 30(b)(6) to testify regarding the
> "administrative review" of [Plaintiff's]
> shooting . . . , there was no forensic
> analysis ever performed to determine which
> bullet struck [Plaintiff]. There was no
> request by Internal Affairs for forensic
> analysis of the physical evidence. No one
> attempted to determine whose round struck
> [Plaintiff]. Accordingly, Plaintiff contends
> that Exhibit 12 is relevant and admissible to
> help show what weight should be assigned to
> this testimony, which in turn undermines any
> claim by Defendants that their investigation
> determined which round struck [Plaintiff].
> Accordingly, the documents are relevant for a
> non-Monell purpose. Since Defendants have not
> shown that the documents are inadmissible on
> all potential grounds, their motion is not
> persuasive.

(Id. at 139:3-17 (citations omitted).) Plaintiff also contends

that "[s]ince the above documents undermine any claim that the

County of Sacramento's investigators determined which round

struck Plaintiff, they are also admissible for impeachment

purposes." (Id. at 3:20-22.)

        The in limine record lacks sufficient factual context

for a pretrial ruling on this motion.

Dated:  October 26, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge