1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   ROBERT I. REESE, JR.,              No.  2:13-cv-00559-GEB-DAD

10                Plaintiff,

11        v.                           **ORDER ON PLAINTIFF'S MOTIONS IN
                                       LIMINE**[*]
12   COUNTY OF SACRAMENTO,
    Sacramento County Sheriff's
13   Department Deputy DUNCAN
    BROWN (Badge #1220), and
14   Sacramento County Sheriff's
    Department Deputy ZACHARY
15   ROSE (Badge #832),

16                Defendants.

17

18        Plaintiff   moves   in   limine   for   a   pretrial   order

19   precluding  the  admission  of  certain  evidence  at  trial.  Each

20   motion is addressed below.

21        **Motion in Limine No. 1**

22        Plaintiff moves to preclude Detective Robert Tracy from

23   "giving any bullet trajectory opinions in this case including his

24   opinion, first stated in [his] May 28, 2015 declaration, that it

25   was Deputy Brown's round that struck Plaintiff." (Pl.'s Mot. in

26   Limine ("MIL") No. 1 7:5-7, ECF No. 96.) Plaintiff argues:

27   _____

    [*]      These motions are suitable for decision without oral argument.
28

                                  1

Detective Tracy's bullet trajectory opinions in this case . . . constitute expert opinion . . . . Although there might be some circumstances under which there could be obvious general observations about bullet trajectories made that are not based on specialized knowledge, the bullet trajectory opinions in this case stated by Detective Tracy clearly do require specialized knowledge. Defendants did not disclose Detective Tracy as an expert witness . . . .

. . . .

. . . Although a few courts have found that bullet trajectory evidence, under some circumstances, did not require "specialized knowledge" within the meaning of [Federal] Rule [of Evidence ("FRE")] 702, the weight of authority clearly finds that bullet trajectory analysis requires at least some degree of specialized expertise."

Relevant here, Detective Tracy's statements are clearly based on scientific, technical, or other specialized knowledge within the scope of [FRE] 702. Detective Tracy was not identified as an expert witness in this case and is not qualified to render expert opinion. . . .

. . . .

Detective Tracy was not a percipient witness to the shooting. His statements that he determined which round struck Plaintiff and that the round fired by Deputy Brown struck Plaintiff are opinions that are properly the subject of expert testimony only. Defendants did not disclose Detective Tracy as an expert witness in their Designation of Expert Witnesses Pursuant to Federal Rule of Civil Procedure [("FRCP")] 26(a)(2). Their failure to do so has prejudiced the Plaintiff's case.

Detective Tracy's bullet trajectory opinions at summary judgment came after all witness disclosure deadlines and thus deprived Plaintiff of an opportunity to seek a rebuttal ballistic expert. There was, further, no opportunity to seek a second deposition or to explore the bas[es] of Detective Tracy's opinions and qualifications to render such opinions because discovery was

2

1  
2  
3  
4  
5  
6  
7  
8  

> closed. As discussed at the final pretrial conference[,] it is undisputed that despite being assigned to review [Plaintiff's] shooting, Detective Tracy did not include his bullet trajectory opinions in any report. If Detective Tracy acquired additional data or performed or obtained additional testing in regard to forming these opinions, there is no record of it. In the absence of a report, Plaintiff has no means of effectively cross-examining Detective Tracy about his bullet trajectory opinions. On all of these bases, defendants' non-disclosure of Detective Tracy's bullet trajectory opinions has prejudiced the Plaintiff's case.

9  (Id. at 2:20-3:18, 6:16-7:3 (citations omitted).)

10  Defendants oppose the motion, rejoining that "Det.

11  Tracy is not being offered as an expert[; t]here is no per se

12  rule that bullet trajectory or path of travel requires expert

13  testimony." (Defs.' Opp'n to Pl.'s MIL No. 1 3:14-15, ECF No.

14  119.) Defendants argue:

15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  

> Det. Tracy made observations about physical locations of evidence that allowed him to conclude about the likely path of travel. Here, physical location of the recovered AR-15 round from a partition wall inside the apartment approximately five feet up, versus the evidence of a ricochet on the ground and recovered 9mm round lodged into a closet door, which appeared to be in line with the ricochet. Taking into account the approximate height of the wound, the conditions of the rounds, did not require specialized knowledge, but based on simply logic grounded in simple line-of-sight determinations. Indeed, photographs show the ricochet tear through the carpet, the path of travel through ottoman fabric, a hole in the closet door, to allow what appears to be an obvious likely path of travel. Such observations do[] not require specialized knowledge, but simple "line of sight" deductive reasoning.

26  (Id. at 3:5-14.)

27  It is unclear precisely what bullet trajectory evidence

28  is within the scope of the motion. Given the in limine record,

3

1    Plaintiff has not shown that certain bullet trajectory evidence

2    concerning the nature of a hole or tear made by a bullet, or the

3    direction from which the bullet(s) came in light of the

4    referenced impact(s) is inadmissible under FRE 701.   Therefore,

5    the motion is DENIED.

6         **Motion in Limine No. 2**

7              Plaintiff moves to "exclud[e] any evidence

8    . . . [concerning Plaintiff's] text messages recovered after the

9    shooting[,]" including "a message dated 'March 25' from 'Nathan,'

10   which reads, 'U pulled a knife on brittany...u really should

11   think about movin...soon...real talk.... im losin ur number after

12   this text (sic).'" (Pl.'s MIL No. 2 2:2-4, 3:9-13, ECF No. 97.)

13   Plaintiff argues:

14              This motion is based on four independent
             rationales. The first is that Plaintiff['s]
15           . . . text messages are plainly irrelevant
             since the defendant officers were neither
16           aware of them at the time they used lethal
             force against Plaintiff, nor did the messages
17           refer to any incident at issue in this case.
             Second, any argument that [Plaintiff] was
18           engaged in any specific conduct based solely
             on his text messages (about his conduct on a
19           separate occasion) would involve an improper
             inference based on [Plaintiff's] alleged
20           character. Third, any reference to these text
             messages would be highly prejudicial at trial
21           in this case, and would also necessitate a
             mini-trial about the previous episode that is
22           the subject of the text messages. [Fourth,
             the text messages are hearsay.]
23

24   (Id. at 2:10-11, 3:14-22.)

25              Defendants counter:

26              These text messages are highly relevant
             and admissible under [FRE] 404(b)(2) to show
27           Plaintiff's motive, opportunity, intent,
             preparation, plan, knowledge, absence of
28           mistake or accident, and/or state of mind, in

                                    4

1                  answering the knocking on his door (by Deputy
2                  Rose) so close in time to these events. In
                 other words, the text messages . . . are
3                  highly probative to show why Plaintiff opened
                 the door in the manner the deputies
4                  observed.

5 (Defs.' Opp'n to Pl.'s MIL No. 2 2:17-22, ECF No. 120.)

6 Defendants further rejoin that "the text messages are relevant to

7 show Plaintiff's credibility." (Id. at 3:15.) Defendants argue:

8                  [Plaintiff] claims to have been asleep at the
                 time the deputies[] knocked, yet the
9                  quickness of the door opening with a knife in
                 his hand after the knocks would reasonably
10                  imply Plaintiff was not asleep, and tends to
                 impeach him in terms of his claim that he did
11                  not have any plan in opening the door, such
                 as seeking to scare whoever was at the door.
12                  Regardless, where Plaintiff himself, sent a
                 text, such is an admission of a party. That
13                  he admitted for example, that "any senseable
                 [sic] person would at that time of night or
14                  morning should" in response to Nathan's
                 accusation of pulling a knife on Brittany
15                  supports a reasonable inference that
                 Plaintiff did not deny doing so, put [sic]
16                  was admitting having done so in offering an
                 explanation why he did so. The accusation of
17                  Nathan of "pulling a knife" would be offered
                 to show what Plaintiff was responding to in
18                  its proper context.

19 (Id. at 3:15-24 (first [sic] in original).)

20                  [FRE] 404(b) is properly applied as
                 follows:
21
22                  "Upon objection . . . , *the proponent of*
                 *the evidence . . . should be required to*
23                  *identify the specific purpose or purposes for*
                 *which [the party] offers the evidence* of
24                  'other crimes, wrongs, or acts.' By so
                 requiring, we do not mandate
25                  hypertechnicality. . . . Nevertheless, the
                 [proponent's] purpose in introducing the
26                  evidence must be to prove a fact that . . .
                 [is] in issue . . . .

27                  After requiring the proponent to
                 identify the specific purpose for which the
28                  evidence is offered, the district court must

determine whether the identified purpose . . . is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must then determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under [FRE] 403. If the evidence satisfies [FRE] 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence."

United States v. Curtin, 489 F.3d 935, 957 (9th Cir. 2007) (emphasis added) (quoting United States v. Merriweather, 78 F.3d 1070, 1076-77 (6th Cir. 1996)). "Indeed, when a proponent of [FRE] 404(b) evidence contends that it is both relevant and admissible for a proper purpose, '*the proponent must clearly articulate* how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to [act in a certain manner].'" Becker v. ARCO Chemical Co., 207 F.3d 176, 191 (3rd Cir. 2000) (quoting United States v. Morely, 199 F.3d 129, 133 (3rd Cir. 1999)).

Here, Defendants have failed to satisfy their burden to admit the text messages under FRE 404(b). They have neither clearly identified a specific purpose permitted under FRE 404(b), nor shown that such purpose is material to this case. Cf. United States v. Gomez, 763 F.3d 845, 856, 860 (7th Cir. 2014) (stating FRE 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning"; "caution[ing] against judicial freelancing in . . . [the FRE 404(b) limiting instruction] area"; and stating "the limiting instruction should be customized to the case rather than

6

1  boilerplate.").

2          However, the in limine record lacks sufficient factual

3  context for a pretrial ruling concerning whether any text message

4  evidence is admissible for impeachment. Therefore, it has not

5  been shown that the exclusion of this evidence can be decided

6  before trial.

7      **Motion in Limine No. 3**

8          Plaintiff seeks to "exclude evidence of [his] arrest,

9  prosecution[,] and [misdemeanor] conviction" of violating

10  California Penal Code section 417(a)(1),[1] arguing "there is no

11  permissible purpose for admitting this evidence at trial." (Pl.'s

12  MIL No. 3 1:23-26, 2:8, ECF No. 98.) Plaintiff contends, *inter*

13  *alia*: "[a]pplication of Heck v. Humphr[ey], 512 U.S. 477 (1994)

14  as a potential bar to this civil suit has been . . . rejected";

15  Plaintiff's nolo contendere plea to violation of section

16  417(a)(1) is inadmissible against him under FRE 410(a)(2);

17  evidence of the conviction is "not admissible as impeachment

18  evidence under [FRE] 608, since the underlying conduct is not

19  probative of Plaintiff's character for truthfulness"; and

20  "because there is no evidence regarding the factual basis for

21  [his] no contest plea [in state court], its admission poses a

22  high risk of misleading the jury, confusing the issues, causing

23  undue prejudice[,] and wasting time." (Id. at 3:3-4, 3:20-21,

24  4:16-20, 7:26-28.)

25

26  _____

[1]    California Penal Code section 417(a)(1) prescribes, in relevant part:
27  "[any] person who . . . in the presence of any other person, draws or exhibits
   any deadly weapon . . . in a rude, angry, or threatening manner   . . . is
   guilty of a misdemeanor, punishable by imprisonment in a county jail for not
28  less than 30 days."

1           Defendants rejoin: "while reference to the plea or

2   conviction may not be admissible for consideration by the jury,

3   the conviction itself and underlying facts related to the

4   conviction should be considered by the Court as a potential bar

5   to Plaintiff's excessive force claims under <u>Heck v. Humphrey</u>."

6   (Defs.' Opp'n to MIL No. 3 2:4-7, ECF No. 121.) Except for

7   Defendants' argument under <u>Heck</u>, Defendants have not opposed this

8   motion.

9           Defendants argue under <u>Heck</u>:

10      [Plaintiff's] nolo contendere plea to the
    charge under California Penal Code 417(a)(1)
11      bars Plaintiff's excessive force claim under
    <u>Heck v. Humphrey</u>, that specific findings by
12      the jury in response to special factual
    interrogatories [in this federal lawsuit]
13      may support the application of a <u>Heck</u> bar to
    Plaintiff's claims . . . .
14

15  (<u>Id.</u> at 2:7-11.)

16          However, Defendants' <u>Heck v. Humphrey</u> defense was

17  raised earlier in this action in a summary judgment motion, which

18  was rejected by District Judge John A. Mendez ("Judge Mendez's

19  MSJ ruling"). (<u>See</u> MSJ Hr'g Tr. 5:23-10:14, ECF No. 68.)

20  Defendants have not shown that Judge Mendez's MSJ ruling does not

21  foreclose the <u>Heck v. Humphrey</u> argument raised in opposition to

22  this in limine motion. It was established during the summary

23  judgment proceeding that there is no factual basis supporting

24  Plaintiff's plea, and Defendants have not shown a basis for

25  reconsideration of Judge Mendez's MSJ ruling.

26          Nor have Defendants shown that their opposition does

27  not concern a substantive legal issue that was required to have

28  been raised within the law and motion cutoff date prescribed in

the May 10, 2013 Status Order. (Status Order 2:6-19, ECF No. 12; see id. at 2:11-16 ("The parties are reminded that motions in limine are procedural devices designed to address the admissibility of evidence and are cautioned that the court will look with disfavor upon substantive motions presented at the final pre-trial conference or at trial in the guise of motions in limine.").)

For the stated reasons, this in limine motion is GRANTED.

**Motion in Limine No. 4**

Plaintiff moves to exclude "any evidence, testimony, argument, or reference at trial to his own criminal history or prior bad acts[,]" arguing such evidence "is plainly irrelevant, . . . would involve an improper inference based on [Plaintiff's] character[, and] . . . would be highly prejudicial at trial." (Pl.'s MIL No. 4, 1:19-2:2, ECF No. 101.)

This motion lacks the concreteness required for a pretrial in limine ruling. See, e.g., Weiss v. La Suisse, Soc'y D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion to exclude evidence for a "lack[] of specificity[,]" stating "[n]o particular documents or testimony have been identified in the motion"); Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (stating "motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

1      **Motion in Limine No. 5**

2              Plaintiff seeks to limit Defendants' toxicology expert

3      Dr. Richard Clark's trial testimony as follows: to preclude him

4      from testifying as to conclusions 1 and 2 in his report, to

5      exclude his opinions that drugs and alcohol affected Plaintiff's

6      memory or caused him to act in a certain manner at the time of

7      his interaction with Defendants Brown and Rose, and to exclude

8      any testimony concerning cocaine usage. (Pl.'s MIL No. 5 2:2-8,

9      ECF No. 103.) Plaintiff's arguments concerning the referenced

10     areas of testimony are addressed in turn.

11             First, Plaintiff argues "Dr. Clark should be prohibited

12     from testifying as to his conclusions numbered 1 and 2[,]"

13     contending they "consist of one-sided recitations of some

14     evidence in this case," and are "neither based on Dr. Clark's

15     medical opinions nor [are] helpful to the jury." (Id. at 4:10-

16     12.) Dr. Clark's first and second conclusions are stated in his

17     expert report as follows:

18             1.   On March 25, 2011 around 0430 in
               the morning, a caller to 911 stated there was
19             an individual who shot a gun and had a
               steak knife in his hand at Oakwood
20             Apartments. The individual had fired the gun
               outside and entered apartment #144. The
21             caller also noted the armed individual in
               apartment #144 was possibly high on drugs.
22             Several deputies responded to the address
               provided by the caller.
23
               2.   The deputies decided to take a "low
24             key" approach at the residence. They
               positioned themselves at the front and back
25             of the apartment, but due to the potential to
               encounter an armed and intoxicated
26             individual, several had their service weapons
               drawn. At approximately 0500, one of the
27             deputies knocked on the front door of
               apartment #144. According to the deputies at
28             the front door, shortly after the knocking,

1         the door flew open and a male subject (later
2         identified as [Plaintiff]) began exiting the
         apartment holding a large knife extended
3         above his head. The deputies noted
         [Plaintiff] to lean forward with the knife in
4         a potential stabbing motion toward Deputy
         Rose. At that time, Deputy Brown fired one
5         round from his rifle, striking Mr. Reese,
         followed by a shot from the service weapon of
6         Deputy Rose which did not strike [Plaintiff].

7 (Clark Report 1, ECF No. 103, ECF p. 8 of 19.)

8       Second, Plaintiff seeks to preclude Dr. Clark from

9 testifying that alcohol and/or drugs contributed to Plaintiff's

10 behavior or caused him to act in a certain way, including Dr.

11 Clark's stated opinion "with medical probability that th[e] level

12 of alcohol in his system and the presence of marijuana led to or

13 contributed to his agitated and bizarre behavior." (Pl.'s MIL No.

14 5 4:13-15, 5:9-11, 5:24-25; Clark Report 3, ECF p. 10 of 19.)

15 Plaintiff argues:

16         As a toxicologist, Dr. Clark is
         qualified to testify regarding the potential
17         range of effects that drugs or alcohol can
         have on a person. However, there is no
18         foundation for Dr. Clark to opine that the
         alcohol or drugs in Plaintiff's system had
19         any specific effect on his behavior, on the
         outcome of the incident, or on his recall of
20         the events following the incident, on the
         night in question. Any . . . testimony that
21         purports to determine what alcohol or
         marijuana "caused" [Plaintiff] to do . . . or
22         how it affected him on a certain occasion is
         speculation. . . . Such opinions are also
23         outside Dr. Clark's expertise as a
         toxicologist.
24
                . . . .
25
        . . . Dr. Clark is qualified to testify
26         as to what the effects of drugs or alcohol
         might be on a person, but he cannot know, and
27         has conceded that he does not know how
         alcohol or drugs actually affected Plaintiff
28         in this case.

1  (Pl.'s MIL No. 5 4:21-5:23.) Plaintiff further argues that such

2  opinions are contrary to Dr. Clark's deposition testimony "that

3  he did not know whether drugs and alcohol affected Plaintiff's

4  behavior during the incident or whether Plaintiff's drug and

5  alcohol consumption prior to the shooting affected his recall of

6  events afterwards." (Id. at 4:16-5:5, 5:26-28.)

7       Third, Plaintiff seeks to preclude Dr. Clark from

8  "testifying or opining about cocaine[,]" arguing "[a]lthough

9  Plaintiff has testified that he consumed a line of cocaine the

10  evening [before] the shooting, Dr. Clark has acknowledged that

11  there is no medical evidence of any cocaine in his system such

12  that it could have affected his behavior." (Id. at 6:5-9.)

13       Defendants rejoin that Dr. Clark's conclusions Nos. 1

14  and 2 "reasonably appear to simply be Dr. Clark's summary of the

15  facts as he understood the material he reviewed, [as] such are

16  not opinions, and Plaintiff is welcome to cross-examine Dr. Clark

17  regarding any facts or assumptions made in forming his opinions."

18  (Defs.' Opp'n to Pl.'s MIL No. 5 2:23-26, ECF No. 123.)

19  Defendants further counter:

20       [Dr.] Clark is a retained expert witness in
         behavioral toxicology, not just toxicology[,
21       and] . . . he was [disclosed] as such: "Dr.
         Clark is an expert behavioral toxicologist
22       and emergency room physician who will testify
         regarding the toxicology results in this
23       case, and the effect of the drugs and alcohol
         used by Plaintiff on his behavior and the
24       circumstances of the events in question."
         Thus, where Plaintiff attempts to exclude his
25       testimony because he improperly limits his
         expertise to just "toxicology", such is
26       improper.

27            . . . .

28
                                    12

1
2
3
4
5
6
7
8
9
10

> Plaintiff also appears to seek to exclude Dr. Clark's opinions based on alleged inconsistencies, or characterization of behavior of one who is under influence of drugs and alcohol. Defendants submit Plaintiff appears to misstate the opinions or confuse any distinction being made between quantification of affect, versus medical relational causation between the alcohol and drug use to behavior and memory.
>
> In other words, it appears Plaintiff's argument is not that Dr. Clark's opinion[s] are not admissible under _Daubert_ . . . but whether there was a sufficient factual basis to render an opinion, or his opinions are inconsistent. . . . [S]uch arguments do not render [his] opinion[s] inadmissible, but go to the weight of the opinions.

11  (Id. at 2:4-3:8.)

12      Defendants' arguments concerning Dr. Clark's

13  "conclusions" Nos. 1 and 2 do not demonstrate the probative value

14  of the challenged information as it concerns the nature of Dr.

15  Clark's anticipated expert testimony. Further, other arguments

16  raised by Defendants are unclear. Nevertheless, Plaintiff has not

17  shown that the permissible scope of Dr. Clark's testimony can be

18  decided before trial. Therefore, this motion is DENIED.

19      **Motion in Limine No. 6**

20      Plaintiff moves to exclude certain defense

21  reconstruction photos (Defs.' Exs. N-1 through N-23) from trial,

22  arguing they "were not timely disclosed[;]" are irrelevant "since

23  they do not depict the shooting, and instead only reflect the

24  defense use of force expert's one-sided reconstruction of the

25  event[;]" and "are more prejudicial than probative, since the

26  jury could substitute [a one-sided] visual image for the

27  necessary evaluation and weighing of the evidence presented on

28  both sides." (Pl.'s MIL No. 6 2:2-3, 3:7-15, ECF No. 95.)

Concerning the timing of disclosure, Plaintiff contends:

> The photographs at issue were not disclosed together with [Defendants' use of force expert] Massad F. Ayoob's [FRCP] 26 report or as a part of any supplemental [FRCP] 26 disclosure. Instead, they were produced for the first time at Mr. Ayoob's deposition.
>
> . . . .
>
> The expert witness disclosure deadline and rebuttal witness disclosure deadlines were February 27, 2015 and March 13, 2015, respectively. Given that the photographs were both in existence and in Defendants' possession almost a full year prior to their disclosure, the failure to disclose is not substantially justified.
>
> Plaintiff was prejudiced by the late disclosure in the form of unfair surprise at the deposition, which was being taken telephonically. The Defendants' late disclosure left Plaintiff's counsel with no reasonable opportunity to cross examine the expert, Mr. Ayoob about the photographs. Defendants clearly failed to comply with [FRCP] 26(a) in regard to these photographs and Plaintiff was greatly prejudiced.

(Id. at 3:18-5:6 (citations omitted).)

Defendants counter:

> while not provided as part of the expert report, the photographs were disclosed during the deposition of Mr. Ayoob in response to a request for production, and therefore the failure was harmless[;] are relevant[;] . . . and their probative value is not outweighed by any prejudice under [FRE] 403.

(Defs.' Opp'n to Pl.'s MIL No. 6 1:27-2:2, ECF No. 124.) Defendants further assert concerning their argument that the late disclosure of the photographs was harmless:

> Here, while the expert report disclosures on February 27, 2015 admittedly did not include the photographs, the[y] were produced on

14

1
2
3
4
5

April 25, 2015. Counsel for Plaintiff did not seek to continue or postpone the deposition. Likewise, while acknowledging an opportunity to ask questions, [he] expressly determined not to. As this occurred six (6) months ago, any failure to disclose at the time of the report was cured by the disclosure at the deposition, and thus was harmless.

6 (Id. at 3:17-21.)

7        "[FRCP 26] requires the parties to disclose the

8 identities of each expert and, for retained experts, requires

9 that the disclosure includes the experts' written reports."

10 Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 827

11 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2)). Such reports

12 must contain, in relevant part: "(i) a complete statement of all

13 opinions the witness will express and the basis and reasons for

14 them; [and] . . . (iii) *any exhibits that will be used to*

15 *summarize or support them.*" Fed. R. Civ. P. 26(a)(2)(B) (emphasis

16 added).

17        "[FRCP] 37(c)(1) gives teeth to these requirements by

18 forbidding the use at trial of any information required to be

19 disclosed by [FRCP] 26(a) that is not properly disclosed." Yeti

20 by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th

21 Cir. 2001). "Two express exceptions ameliorate the harshness of

22 [FRCP] 37(c)(1): The information may be introduced if the

23 parties' failure to disclose the required information is

24 substantially justified or harmless." Id. (citing Fed. R. Civ. P.

25 37(c)(1)). "[T]he burden is on the party facing sanctions to

26 prove harmlessness." Id.

27
28

Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is

15

1
2
3
4

> justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.

5   *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th

6   Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857

7   (7th Cir. 2003)).

8         Here, Defendants have shown that the late disclosure of

9   the referenced photographs was harmless. Although Plaintiff makes

10  a conclusory argument that he was "greatly prejudiced" by the

11  disclosure of the photographs during Mr. Ayoob's deposition, he

12  has not shown how he has been prejudiced. The photographs are

13  "merely illustrative" of Mr. Ayoob's opinions and the bases

14  therefore. *Cabassa-Rivera v. Mitsubishi Motors Corp.*, No. 05-

15  1217(JAF), 2006 WL 6870560, at *12 (D.P.R. May 2, 2006) (denying

16  motion in limine to preclude expert from testifying about matters

17  covered during deposition that were not contained in the expert's

18  report). Further, "[t]o the extent that Plaintiff[] w[as]

19  surprised by what transpired at [the] deposition, [he] ha[s] had

20  . . . ample time" to accommodate accordingly. *Id.* Mr. Ayoob was

21  deposed on April 25, 2015, approximately six months before trial

22  was scheduled to commence.

23        Further, Plaintiff has not shown that the photographs

24  are irrelevant or should be excluded under FRE 403.

25        For the stated reasons, this motion is DENIED.

26  ///

27  ///

28  ///

1    **Motion in Limine No. 8[2]**

2         Plaintiff seeks to exclude evidence concerning

3    Plaintiff's receipt of "any type of governmental financial

4    assistance" as irrelevant and unduly prejudicial, arguing "in

5    today's society[,] there may be jurors who take a dim view of

6    someone who receives any sort of public assistance and, on the

7    basis of poverty, denigrate the merits of [his] claim." (Pl.'s

8    MIL No. 8 1:23-24, 2:3-5, ECF No. 99.) Plaintiff further argues

9    the Court "should . . . redact . . . any testimony or documents

10   to the extent such . . . evidence reflects on his economic

11   condition." (Id. at 2:18-20.)

12        Defendants rejoin that "this evidence is relevant to

13   Plaintiff's claims for noneconomic damages, bias and motivation

14   for suit, and does not run afoul of [FRE] 403." (Defs.' Opp'n to

15   Pl.'s MIL No. 8 1:26-28, ECF No. 125.) Defendants argue:

16             In this case, Plaintiff requests noneconomic
               damages from Defendants based on his post
17             incident pain and suffering, and a diminished
               quality of life as a result of injuries he
18             sustained from the shooting. Plaintiff
               identifies three separate testimonial
19             witnesses . . . to testimony about the effect
               of the shooting on Reese's "quality of life."
20
               By making that damage claim, Defendants
21             submit that Plaintiff has put his pre-
               shooting quality of life directly at issue.
22             Therefore, Defendants must be allowed to
               explore different aspects of Plaintiff's
23             quality of life prior to the incident[,
               which] . . . may include . . . his financial
24             condition. . . . In that regard, [that] there
               was a need for Plaintiff to participate a
25             County General Assistance Program tends to be
               probative of the quality of his life before
26             the incident on March 25, 2011. . . .
               Further, Plaintiff's financial condition
27   ───────────────────────────
     [2]    There is no Plaintiff's Motion in Limine No. 7. (See Pl.'s Notice, ECF
28   No. 104.)

1    before this lawsuit is directly relevant to
     bias against the County, and motivation to
2    pursue this litigation against the County.
     For these reasons, Defendants submit that
3    Plaintiff's acceptance of public assistance
     by way of participation in a General
4    Assistance program prior to the incident is
     relevant to his damages claims in this case
5    . . . .

6   (Id. at 2:22-3:12.)

7        Although it has not yet been decided how the jury will

8   be instructed on the damages issues, it is understood that

9   Plaintiff seeks pain and suffering damages under federal and

10  California law.  The California Supreme Court states in Capelouto

11  v. Kaiser Found. Hosps., 7 Cal. 3d 889, 892-93 (1972):

12           In general, courts have not attempted to draw
             distinctions between the elements of "pain"
13           on the one hand, and "suffering" on the
             other; rather, the unitary concept of "pain
14           and suffering" has served as a convenient
             label under which a plaintiff may recover not
15           only for physical pain but for fright,
             nervousness, grief, anxiety, worry,
16           mortification, shock, humiliation, indignity,
             embarrassment, apprehension, terror or
17           ordeal.

18           Here, Plaintiff has not shown that the source(s) of

19  money Plaintiff receives for subsistence are not probative of the

20  "nervousness," "anxiety," "worry," and/or "apprehension"

21  components of his claimed "pain and suffering" damages.  Further,

22  Plaintiff has not demonstrated that such evidence's relevance, in

23  that regard, is "substantially outweighed by the danger of unfair

24  prejudice that drawing [the asserted] adverse inference" could

25  cause Plaintiff.  Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d

26  1258, 1266 (9th Cir. 2000).

27           Therefore, this motion is DENIED.

28

                              18

1               **Motion in Limine No. 9**

2           Plaintiff moves to exclude any evidence or reference at

3 trial to "an encounter between Plaintiff . . . and his neighbors"

4 that occurred before the shooting, arguing such evidence: is

5 irrelevant "since the defendant officers were unaware of it at

6 the time they used lethal force against Plaintiff"; is improper

7 character evidence under FRE 404; and should be excluded as

8 highly prejudicial. (Pl.'s MIL No. 9 2:2-13, ECF No. 102.)

9           This motion lacks the concreteness required for a

10 pretrial in limine ruling.

11              **Motion in Limine No. 10**

12           Plaintiff moves to "exclude Plaintiff's unrelated drug

13 and alcohol use," arguing: "[e]xcept for [Plaintiff's] blood

14 alcohol and THC content at the relevant time and alcohol and

15 marijuana consumption March 24-25, 2011, Plaintiff's alcohol and

16 drug use holds no probative value to the issues in this case[,]"

17 and is highly prejudicial. (Pl.'s MIL No. 10 1:22-24 2:10-12, ECF

18 No. 100.)

19           Defendants counter that Plaintiff's "historical drug

20 use/abuse is probative for purposes of damages[,]" arguing

21 "Plaintiff's past drug and alcohol use clearly affects his

22 quality of life, in comparison from past to present, which in

23 turn affects the calculation of damages." (Defs.' Opp'n to Pl.'s

24 MIL No. 10 2:8-9, 2:19-21, ECF No. 127.) Defendants further

25 rejoin:

26                 In terms of unfair prejudice,
             Plaintiff's argument that such evidence is

27              prejudicial falls far short of whether its
             probative value is substantially outweighed

28              by the danger of unfair prejudice, confusion

1    of the issues, or misleading the jury, or by
     considerations of undue delay, waste of time,
2    or needless presentation of cumulative
     evidence under [FRE]. 403.

3

4    (Id. at 2:23-26.)

5         Plaintiff has not shown that this motion can be decided

6    before trial. Therefore, it is DENIED.

7    Dated:  October 26, 2015

8

9    _____
                                         
10   GARLAND E. BURRELL, JR.
     Senior United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28